IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RITA CARDENAS, an individual, L.V., by and through her guardian ad litem Ruby Cardenas, L.M., by and through her guardian ad litem Ruby Cardenas, and DAVID ORTIZ, an individual, <br><br> Plaintiffs, <br><br> v. <br><br> COUNTY OF ALAMEDA, a municipal corporation; COLBY STAYSA, MATTHEW FARRUGGIA, MICHAEL BUCKHOUT, VICTOR FOX, RAMSEY JACKSON, JAMES MCGRAIL, VICTOR RAMIREZ, and DOES 1-25, individually and in their official capacities, <br><br> Defendants. | No. C 16-05205 WHA <br><br> **ORDER GRANTING MOTION TO DISMISS** |

**INTRODUCTION**

In this civil rights action, plaintiffs claim constitutional violations arising out of a police search of their home. The County and defendant officers move to dismiss for failure to state a claim for relief. For the reasons below, the motion is **GRANTED**.

**STATEMENT**

On February 26, 2015, plaintiff Rita Cardenas was awakened by a loud commotion in front of her house. A voice over a loud speaker ordered Cardenas, her brother, and her brother's roommate to exit their home with their hands up to clear the way for a police search of the premises. As Cardenas, her brother, and her brother's roommate walked outside, they found

their residence surrounded by several County officers (all named as defendants herein) with their guns drawn. The officers handcuffed, then separated them. Cardenas' two minor daughters, plaintiffs L.V. and L.M., who are both represented by the same guardian *ad litem*, awoke due to the noise and came to the front door (Amd. Compl. ¶¶ 19–21).

The officers interrogated all five residents separately and demanded to know the location of the "man with long hair" who was the subject of a warrant to search their home. The officers also showed our plaintiffs a photograph of the subject. Plaintiffs replied that they did not recognize the "man with the long hair," but the officers ignored them. The officers continued to aggressively try to coerce information from each of the five individuals, including Cardenas' two minor daughters (*id.* ¶¶ 22–23, 34).

Officers patted down Cardenas and her daughters then escorted them to the police van whereupon the officers shot multiple cans of tear gas through the windows. During the subsequent search, the officers seized five ounces of marijuana (for which the brother's roommate proffered his medical marijuana license). No items listed in the search warrant were found (*id.* ¶¶ 24–25).

Throughout the search, Cardenas requested to see a search warrant, but the officers denied her request. It turned out that the search warrant, signed by Judge Robert McGuiness and based on the affidavit of Alameda County Sheriff's Deputy Victor Ramirez, contained "inaccuracies," and the residents of Cardenas' house were not the true subjects of the warrant (*id.* ¶ 28).

After the search, the residents could not return to their home because the house was still contaminated from the toxic residue of the tear gas. The next day, plaintiffs found their windows broken, holes in the ceiling, and some of their personal property damaged from the search. Moreover, Cardenas' eldest daughter suffered a severe reaction to the tear gas, which caused her eyes and skin to burn and her nose to run (*id.* ¶¶ 26–27).

On September 9, 2016, plaintiffs commenced this action in federal court here in San Francisco, asserting claims under Section 1983 and violations of the Fourth and Fourteenth Amendment, among others.

Originally, plaintiffs brought this action against the County, the City of Oakland, and Oakland police officers (Dkt. No. 6). The County moved for dismissal of the complaint on the grounds that the complaint failed to state facts to state a claim against the County other than vague references to a warrant that was issued based on "inaccurate" statements made by a County deputy (Dkt. No. 9). Plaintiffs did not append the warrant affidavit to their initial complaint nor did they provide any further discussion or facts illustrating the alleged inaccuracies (Compl. ¶ 28). Pursuant to the notice requesting defendant County to provide the warrant, the warrant was submitted to the Court at oral argument. At the hearing on the motion to dismiss, plaintiffs indicated that they intended to amend their complaint to substitute County individuals as defendants. Accordingly, the Court denied as moot the motion to dismiss, allowed plaintiffs to file an amended complaint, and granted defendants the option to file a motion to dismiss or answer the amended complaint (Dkt. No. 25).

Plaintiffs amended their complaint alleging claims for constitutional violations, violations of the California Civil Code, negligence, assault and battery, and false imprisonment against the County and County officers (Dkt. No. 29). The County and County officers now move to dismiss the claims for constitutional violations, the tort claims, as well as the claim for punitive damages against them with prejudice. At the hearing on April 27, 2017, which plaintiffs' counsel failed to attend, the Court directed defense counsel to provide it with a copy of the documents, including the police report, provided to plaintiffs' counsel in compliance with the prior order (Dkt. No. 26). This order follows full briefing and oral argument.

**ANALYSIS**

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. A court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

As a threshold matter, plaintiffs assert, without citing any authority on point, that "a relaxed pleading standard applies" to *Monell* claims. In *Johnson v. City of Shelby*, 574 U.S. ___, 135 S.Ct. 346, 347 (2014), the Supreme Court held that no heightened pleading rule requires

3

plaintiffs seeking damages for violations of constitutional rights to invoke Section 1983 expressly in order to state a claim. Nevertheless, *City of Shelby* goes on to say "a plaintiff . . . must plead facts sufficient to show that her claim has substantive plausibility." *Id.* Here, the deficiency is a failure to plead facts sufficient to show substantive plausability.

Plaintiffs assert that the individual County officers violated their Fourth Amendment rights by wrongfully detaining, arresting, and seizing by use of force and/or threat of force. Plaintiffs also seek to hold the County liable for the alleged constitutional violations.

Plaintiffs' first and second claims are general claims under Section 1983, and their third claim is a claim under *Monell*. This order clarifies that notwithstanding plaintiffs' amendment substituting City officers with County officers, municipalities cannot be held liable under Section 1983 for unconstitutional torts on a theory of *respondeat superior*. *Monell v. Department of Social Services*, 436 U.S. 658, 691 (1978). In other words, municipalities are not liable for the actions of their employees simply as a result of their employment status. The sole avenue of municipal liability is under *Monell*. Accordingly, the first three claims as against the County are duplicative, inasmuch as the County can only be liable for a Section 1983 claim under *Monell*. This order therefore treats them jointly below.

In *Monell* the Supreme Court established that local governments, such as the County, can be held liable for Section 1983 violations, but only under narrow circumstances, as now discussed.

### 1. MUNICIPAL LIABILITY

In interpreting *Monell*, our court of appeals has identified three viable theories for municipal liability based on constitutional violations under Section 1983:

> *First*, a local government may be held liable when implementation of its official policies or established customs inflicts the constitutional injury. . . . *Second*, under certain circumstances, a local government may be held liable under Section 1983 for acts of "omission," when such omissions amount to the local government's own official policy. . . . *Third*, a local government may be held liable under Section 1983 when the individual who committed the constitutional tort was an official with final policymaking authority or such an official ratified a subordinate's unconstitutional decision or action and the basis for it.

4

*Clouthier v. Cnty. of Contra Costa*, 591 F.3d 1232, 1249–50 (9th Cir. 2010) (internal citations omitted).

This order addresses each theory in turn.

### A. Policy or Custom.

One recognized path for *Monell* liability is a custom or practice behind the asserted constitutional violations. A "custom must be so 'persistent and widespread' that it constitutes a 'permanent and well settled . . . policy.'" *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996) (quoting *Monell*, 436 U.S. at 691). "Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." *Trevino*, 99 F.3d at 918. "A custom or practice can [also] be inferred from widespread practices or evidence of repeated constitutional violations for which the errant municipal officers were not discharged or reprimanded." *Hunter v. Cnty. of Sacramento*, 652 F.3d 1225, 1233–34 (9th Cir. 2011) (alteration in original).

Thus, the critical question becomes whether the purported violations had been "so persistent and widespread" among the County officers and occurred so consistently and frequently as to be "well settled." *Monell*, 436 U.S. at 691. Our plaintiffs allege that Alameda County engaged in a widespread custom of allowing "repeated acts of: excessive use of force in arresting and/or detaining individuals, unreasonable execution of warrant so as to cause unnecessary harm and/or damage, imprisonment and arrest based on unreliable information and/or engaging in similar acts of misconduct on a repeated basis and failure to institute and enforce a consistent disciplinary policy" (Amd. Compl. ¶ 41). Plaintiffs offer no factual allegations to support these conclusions regarding widespread conduct. Even if County officers' conduct during the search of plaintiffs' home were unconstitutional, the complaint fails to demonstrate sufficient duration and consistency for the alleged conduct to establish a customary practice within the meaning of *Monell*. One occurrence, even if probable, does not a custom make. The allegation therefore fails to show that the County's conduct is "well settled." *Monell*, 436 U.S. at 691.

5

### B. Deliberately Indifferent Omission.

"[A] local government may be held liable under [Section] 1983 for acts of 'omission,' when such omissions amount to the local government's own official policy. . . . To impose liability on a local government for failure to adequately train its employees, the government's omission must amount to 'deliberate indifference' to a constitutional right." *Clouthier*, F.3d at 1249. Where, as here, the alleged omission is the County's failure to adequately train its police officers "the need for more or different training [must be] so obvious, and the inadequacy so likely to result in the violation of constitutional rights that the policymaker of the city can reasonably be said to have been deliberately indifferent to the need." *City of Canton*, 489 U.S. at 390 (alteration in original). The Supreme Court purposefully applied the high standard of "deliberate indifference" to eliminate the chance of a *de facto respondeat superior* liability. *Clouthier*, 591 F.3d at 1250.

Plaintiffs claim that the County officers' training rated so poor and became so likely to result in unconstitutional warrant searches as to violate *Monell*. Once again, however, this allegation remains completely devoid of supporting facts. Other than conclusory allegations, plaintiffs fail to show that the County had a training policy that amounted to deliberate indifference to the constitutional rights of the persons with whom its officers are likely to come into contact.

### C. Decision by Policymaking Authority or Ratification.

The third path to *Monell* liability is when the individual who committed the constitutional violation is an official with final policymaking power or the decision has been ratified by such an individual. *City of Louis*, 485 U.S. at 123. To show ratification, a plaintiff must establish that the "authorized policymakers approve[d] a subordinate's decision and the basis for it." *Christie v. Iopa*, 176 F.3d 1231, 1239 (9th Cir. 1999). "[I]t is well settled that a policymaker's mere refusal to overrule a subordinate's completed act does not constitute approval. To hold cities [and counties] liable under Section 1983 whenever policymakers fail to overrule the unconstitutional discretionary acts of subordinates would simply smuggle *respondeat superior* liability into Section 1983." *Id*. at 1239–40.

Plaintiffs do not contend that an authorized policymaker conducted the allegedly unconstitutional warrant search of plaintiffs' home. Plaintiffs, however, accuse the County of ratification by "condoning and tacitly encouraging the abuse of police authority and disregard for the constitutional rights of citizens" (Amd. Compl. ¶ 40).

Under this theory, the "policymaker" allegedly knew the officers' purported unconstitutional conduct before it occurred and approved it. Yet, plaintiffs fail to provide any factual support showing that anyone knew of the allegedly unconstitutional conduct. On the allegations of the complaint it is implausible to infer that the County ratified or authorized an unconstitutional warrant search.

This order need not further address the issue of the asserted occurrence of constitutional violations until plaintiffs can justify municipal liability pursuant to one of the *Monell* principles. This order will now turn to the alleged constitutional violations by the individual defendant officers.

### 2. LIABILITY OF INDIVIDUAL OFFICERS.

Plaintiffs contend defendant officers are liable under Section 1983 by violating their rights to be free from unreasonable searches and seizures and unlawful and excessive use of force under the Fourth Amendment.

To state a Section 1983 claim, plaintiffs must show "(1) that a person acting under color of state law committed the conduct at issue, and (2) that the conduct deprived the claimant of some right, privilege, or immunity protected by the Constitution or laws of the United States." *Leer v. Murphy*, 844 F.2d 628, 632–633 (9th Cir. 1988). Further, Section 1983 "creates a cause of action based on personal liability and predicated upon fault; thus, liability does not attach unless the individual defendant caused or participated in a constitutional deprivation." *Vance v. Peters*, 97 F.3d 987, 991 (9th Cir. 1996). Because vicarious liability is inapplicable to Section 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution. *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009).

7

The County officers contend plaintiffs' claim should fail as their amended complaint purports to seek liability against the officers on a group liability theory as it fails to allege with specificity which particular officer engaged in the conduct that caused the alleged violation. For example, plaintiffs allege that "Alameda County Sheriff's Department officers surrounded the residence with their guns drawn," without specifying which particular defendants, if any, were the officers who allegedly "surrounded the residence with their guns drawn" (Amd. Compl. ¶ 21).

At an earlier hearing, the County agreed to turn over all the police reports. The reports revealed significant information that would have been useful in pleading the specific constitutional violation claims. Nevertheless, the pleading is defective in two respects. *First*, plaintiffs fail to allege with specificity who was responsible for what violation. *Second*, review of the police report indicates that the police had reasonable grounds for their actions. Of course, the police report could be in error. Since plaintiffs may replead to specify who caused the constitutional violations, the Court insists that plaintiffs' counsel refer to the details of the police report and plead with more specificity what unconstitutional acts occurred.

### 3. PLAINTIFFS' TORT CLAIMS ARE BARRED.

Plaintiffs' other claims against defendants for a California Civil Code violation, negligence, assault and battery, false imprisonment, and intentional infliction of emotional distress are barred by the California Government Claims Act. Sections 945.4 and 950.2 of the California Government Code require the presentation of a timely claim to the public entity and rejection of the claim as a prerequisite to the suit against a public entity and employee, respectively. The County argues that plaintiffs' assertion that they have "exhaust[ed] all administrative remedies pursuant to the California Government Code Section 910" is insufficient inasmuch as no dates nor facts demonstrating compliance have been alleged (Amd. Compl. ¶ 18). Plaintiffs do not respond to this issue. This order agrees with the defendants and bars claims four through eight accordingly.

**4. AWARDS OF ATTORNEYS' FEES AND PUNITIVE DAMAGES PURSUANT TO SECTIONS 1985 AND 1986 OF TITLE 42 OF THE UNITED STATES CODE.**

The County disputes plaintiffs' claim for punitive damages and attorneys' fees pursuant to Sections 1985 and 1986 of Title 42 of the United States Code. In plaintiffs's opposition, plaintiffs concede to have inadvertently stated this claim and therefore withdraw it.

**5. PUNITIVE DAMAGES.**

The County moves to strike plaintiffs' prayer for punitive damages against it, inasmuch as punitive damages cannot be recovered from public entities under Section 1983. Plaintiffs agree and assert that they do not seek punitive damages as against the County. Plaintiffs' claim for punitive damages against the County, therefore is dismissed.

**CONCLUSION**

Defendants' motion to dismiss is **GRANTED** as to claims against the County. Plaintiffs shall have until **MAY 18** to file a motion, noticed on the normal 35-day calendar, seeking leave to amend solely as to the constitutional violation claims against defendant officers. A proposed amended complaint must be appended to this motion. Plaintiffs must plead their best case. The motion should clearly explain how the amended complaint cures the deficiencies identified herein and it should include as an exhibit a redlined or highlighted version identifying all changes.

**IT IS SO ORDERED.**

Dated: May 2, 2017.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

9