IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

RITA CARDENAS, an individual, L.V., by and through her guardian ad litem Ruby Cardenas, L.M., by and through her guardian ad litem Ruby Cardenas, and DAVID ORTIZ, an individual,

Plaintiffs,

v.

COUNTY OF ALAMEDA, a municipal corporation; COLBY STAYSA, MATTHEW FARRUGGIA, MICHAEL BUCKHOUT, VICTOR FOX, RAMSEY JACKSON, JAMES MCGRAIL, VICTOR RAMIREZ, and DOES 1-25, individually and in their official capacities,

Defendants.

No. C 16-05205 WHA

**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO AMEND**

**INTRODUCTION**

In this motion to amend and accompanying amended complaint, plaintiffs claim constitutional violations arising out of a police search of their home. Defendants oppose the motion arguing that plaintiffs fail to state a claim for relief. For the reasons below, the motion is **GRANTED IN PART** and **DENIED IN PART**.

**STATEMENT**

This civil action arises from a search of plaintiffs' residence in February 2015. The facts are set forth more fully in a prior order (Dkt. No. 45). In brief, plaintiffs allege that police officers from the Alameda County Sheriff's Department summoned them from their home in the middle of the night, pointed weapons at them, handcuffed and interrogated them, and caused damage to parts of their home in the search that ensued.

**1. PROCEDURAL HISTORY.**

In September 2016, plaintiffs commenced this Section 1983 action. Defendants moved to dismiss. At a January 2017 hearing, a ruling denied the motion as moot and ordered defendants to produce preliminary discovery, including the warrant affidavit and the incident report from the search (Dkt. No. 25). Defendants did so (*see* Dkt. No. 43). Plaintiffs amended their complaint in February 2017, and defendants again moved to dismiss. On May 2, 2017, an order dismissed plaintiffs' claims against the County of Alameda, and allowed plaintiffs to seek leave to amend their complaint as to the constitutional violation claims against individual defendant officers.

That order stated that plaintiffs' claims against individual officers were deficient in two respects. *First*, plaintiffs failed to allege with sufficient specificity who was responsible for what alleged violation. *Second*, a police report indicated that police acted reasonably under the circumstances. Plaintiffs were ordered to follow up and to refer to the police report and replead with more specificity what unconstitutional acts occurred, and clearly explain how their amended complaint cured the deficiencies of their prior complaint (Dkt. No. 45).

Plaintiffs have now submitted a proposed second amended complaint, which purports to address the deficiencies in their earlier pleadings. Plaintiffs' motion for leave to amend does not, however, explain how their amended complaint cured earlier deficiencies. Accordingly, the Court has sorted through the proposed amended complaint for counsel.

**2. NEW ALLEGATIONS.**

Among the new allegations, plaintiffs state that "Defendant Ramirez wrongfully and negligently asserted that he spotted [a known suspect] inside of Plaintiff Cardenas' residence," leading to the issuance of a search warrant. In the search that followed, "Defendant Ramirez aimed his firearm at Plaintiffs Cardenas and Ortiz for a duration of time that exceeded three minutes," and "[s]ubsequently, Plaintiff Cardenas [and] Plaintiff Ortiz . . . were handcuffed and separated" (Dkt. No. 47 ¶¶ 17, 20).

Plaintiffs further allege that Officer Ramirez aimed weapons at the two minor plaintiffs — who were eight and fourteen years old — for more than five minutes, and then "aggressively interrogated" them (*id*. ¶¶ 21–22). The proposed second amended complaint adds that "the

search lasted for more than three hours" and yet "each of the Defendants" ignored plaintiffs pleas that their children were barefoot and cold, and continued to demand information from them. Finally, the proposed complaint states that Officers Buckhout and Fox shot tear gas canisters through the windows of plaintiffs' home (*id.* ¶ 23).

Based on these allegations, the proposed second amended complaint recites three claims for relief, each arising under Section 1983: (1) unreasonable search and seizure in violation of the Fourth Amendment, (2) unlawful use of excessive force in violation of the Fourth Amendment, and (3) violations arising under the Fourteenth Amendment. Because the same conduct and legal analysis apply to the Fourth Amendment claims, this order analyzes them together, and treats them as a single claim. The order then analyzes the Fourteenth Amendment claim separately.

Before reaching the underlying constitutional claims, however, this order first considers the threshold question of whether plaintiffs have cured deficiencies in their earlier pleadings by identifying individuals who committed Section 1983 violations.

**ANALYSIS**

**1. SECTION 1983.**

To state a Section 1983 claim, plaintiffs must show "(1) that a person acting under color of state law committed the conduct at issue, and (2) that the conduct deprived the claimant of some right, privilege, or immunity protected by the Constitution or laws of the United States." *Leer v. Murphy*, 844 F.2d 628, 632–33 (9th Cir. 1988). Section 1983 liability "arises only upon a showing of personal participation by the defendants." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Identifying how a particular individual participated in an allegedly unlawful act is a prerequisite of a Section 1983 claim, and is likewise a requirement under the pleading standard set forth in FRCP 8. *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009).

Defendants argue that plaintiffs' proposed second amended complaint, like their earlier complaints, is defective because it fails to identify individuals who engaged in the allegedly unconstitutional acts. This is not accurate. Unlike earlier complaints, the proposed second amended complaint makes numerous specific allegations regarding the conduct of Officer

3

Ramirez. In addition, the proposed second amended complaint states that Officers Buckhout and Fox deployed tear gas canisters into plaintiffs' home, breaking windows in the process. These allegations adequately connect individuals' actions to allegedly unconstitutional acts.

Nevertheless, certain allegations remain defective for failing to properly identify how particular defendants engaged in allegedly unconstitutional acts. Specifically, plaintiffs' allegation that "Defendants Staysa, Farruggia, Buckhout, Fox, Jackson, McGrail and Ramirez were on the scene" (Dkt. No. 47 ¶ 20) does not connect any of these defendants with any misconduct for which relief may be sought. Because this is the only place in which Officers Staysa, Farruggia, Jackson, and McGrail are named, plaintiffs allegations against them must be **DISMISSED**.

### A. Fourth Amendment Claims.

This order now turns to whether the specific facts alleged can support legal claims against Officers Ramirez, Buckhout, and Fox.

The Fourth Amendment prohibits government agents from engaging in unreasonable searches and seizures, including through the use of excessive force. To determine whether a search or seizure is unreasonable, the court must balance the nature of the intrusion on the individuals' rights against the countervailing government interests. *Graham v. Connor*, 490 U.S. 386, 396 (1989). In an excessive force action, that means balancing the invasion of the plaintiff's personal security against the officers' need to use force. *Tekle v. United States*, 511 F.3d 839, 846 (9th Cir. 2007). The "reasonableness" inquiry is fact-intensive and courts must take into account whether, in light of the totality of the circumstances facing an officer, he took an objectively reasonable approach. *Graham*, 490 U.S. at 396.

Plaintiffs first allege that they were unreasonably seized because, at the time they were detained, officers knew that plaintiffs were not the subject of an arrest warrant. Plaintiffs conclude that because they were "not the true subjects of the warrant," officers were not constitutionally permitted to detain them (Dkt. No. 47 ¶ 32).

Plaintiffs' allegation ignores the fact that officers were executing not only an arrest warrant but also a search warrant on plaintiffs' home. Officers executing a search warrant can

4

isolate the occupants of the premises while the search is conducted. *Muehler v. Mena*, 544 U.S. 93, 98 (2005). Isolation without more states no claim.

Our plaintiffs, however, further allege that officers used excessive force in the course of the detention, rendering their seizure constitutionally unreasonable. This allegation has merit and demands closer scrutiny.

Though officers may not use *excessive*, or *unreasonable* force in the course of a detention, they are permitted to use an appropriate quantum of force in order to protect themselves, prevent a detainee's flight, and facilitate an orderly search. *Mena*, 544 U.S. 93, 98 (2005) (citing *Michigan v. Summers*, 452 U.S. 692, 702–03 (1981)). If there is a high risk of violence, officers may even detain occupants at gunpoint or place them in handcuffs while they conduct a search. *Mena*, 544 U.S. at 98.

Defendants point to *Mena*, noting the factual similarities with this action. There, as here, police searched a home subject to a warrant authorizing a search for weapons and evidence of gang membership. Believing a gang member lived in the home, the officers entered in the middle of the night with guns drawn. The plaintiff, who lived in the house but was not suspected of criminal wrongdoing, was roused from her bed and detained at gunpoint. Officers then moved her from her bedroom to the garage and placed her in handcuffs for two to three hours while they searched the rest of the home. Despite the invasiveness of the seizure, the Supreme Court reasoned that because the warrant authorized a search for weapons, and a wanted gang member resided at the home, the officers acted reasonably. *Id.* at 97–100.

The Supreme Court has found other similarly invasive conduct reasonable where the police were executing a search warrant on a home, and the method of detention could be justified by the need to protect officers from harm. *See, e.g., Los Angeles Cnty. v. Rettele*, 550 U.S. 609 (2007) (non-suspect residents forced out of their bed despite protests that they were nude, and held at gunpoint). Defendants argue that the conduct at issue here is less invasive than that which has been upheld as reasonable in other warranted home searches, and therefore, plaintiffs have failed to state a viable legal claim even accepting their factual allegations as true (Def.'s Opp. at 9).

5

The authorities defendants cite, however, are all actions that have proceeded to later stages of litigation. *Mena* was decided after trial, and *Retelle* on summary judgment. In those actions, the parties had taken discovery and developed the facts. This action has not yet proceeded past the pleading stage, and aside from very limited discovery, plaintiffs have not had an opportunity to develop their case.

Moreover, other binding decisions depart in important ways from the authorities cited by defendants. For example, none of defendants' authorities consider the propriety of detaining children at gunpoint. In *Tekle*, our court of appeals held that a reasonable jury could find officers violated the Fourth Amendment when, during a home search, they pointed a gun at an eleven-year-old child, searched him and placed him in handcuffs. In its analysis, the court observed that amount of force used against the plaintiff was "very substantial," but that the "need for force, if any, was minimal at best" because the plaintiff was a child, not the subject of an arrest warrant, was unarmed, compliant with officers orders, and did not otherwise pose a threat. *Tekle*, 511 F.3d at 845–46.

*Tekle* counsels against dismissing plaintiffs' Section 1983 claims pled against Officer Ramirez who allegedly held the eight- and fourteen-year-old plaintiffs at gunpoint for over five minutes, and, despite the fact that they were barefoot and in pajamas, detained them outside, in the middle of the night, for more than three hours (Dkt. No. 47 ¶¶ 21–22, 25). Moreover, due to the fact-intensive nature of the Fourth Amendment reasonableness inquiry, the similar — though not identical — fact patterns in the decisions cited by defendants do not automatically bring the seizure of the adult plaintiffs here within the realm of reasonableness. Unlike decisions cited by defendants, the four plaintiffs here were detained by a large number of officers (approximately fifteen). This diminishes the need for the use of weapons or handcuffs as it is likely that this large cadre of policemen was capable of keeping the much smaller number of residents under control. Furthermore, Officer Ramirez allegedly pointed his gun at plaintiffs for over three minutes despite the fact that they at all times complied with the officers' orders. Finally, Officer Ramirez detained plaintiffs outdoors in February for over three hours. This detention cannot be judged objectively reasonable without resort to further factual inquiry concerning the need to

1 detain plaintiffs for this period of time and under these conditions. The allegations against
2 Officer Ramirez plausibly state a claim that he used excessive force against plaintiffs in violation
3 of the Fourth Amendment.

4 The only specific allegation regarding Officers Buckhout and Fox, is that they shot
5 "barricade penetrating projectiles" containing tear gas through plaintiffs' windows, which caused
6 "significant damage, including holes in the ceiling and broken windows" and contaminated
7 plaintiffs' home with tear gas. The use of chemical agents may constitute excessive force in
8 certain circumstances. For example, a police officer may not use pepper spray against an
9 individual who does not pose a threat. *Young v. Cnty. of Los Angeles*, 655 F.3d 1156, 1168 (9th
10 Cir. 2011).

11 Here, the incident report provided by the officers indicates that they believed a
12 potentially dangerous individual remained in plaintiffs' home because, at some point during the
13 raid, officers saw an individual matching the description of the suspect running toward the rear
14 of the house, and one of the children told an officer that a man matching the description of the
15 suspect was still in the house. Accordingly, they deployed chemical agents to flush him out
16 (Dkt. No. 43 at 17).

17 Plaintiffs, however, dispute that any of them identified an individual matching the
18 description of the suspect. According to the proposed second amended complaint, "[a]ll five of
19 the residents emphatically and repeatedly indicated to Defendant Ramirez that they did not know
20 and never had any contact with [the suspect]" (Dkt. 47 ¶ 22). Moreover, the incident report
21 indicates that officers did not find anyone inside the home after they searched it (Dkt. 43 at 17).
22 These facts, taken together, make it plausible that defendants Buckhout and Fox acted
23 unreasonably by deploying teargas canisters through the windows of the home. This order by no
24 means holds that the deployment of tear gas in these circumstances is *per se* unreasonable, but
25 merely that based on the pleadings, the officers had no call to shoot up the home with tear gas.

26 Plaintiffs motion to amend is **GRANTED** as to their Fourth Amendment claims that
27 Officers Ramirez, Buckhout, and Fox used excessive force against them in the course of the
28 search.

### B. Fourteenth Amendment Claims.

Plaintiffs further allege that defendants violated the Fourteenth Amendment because their conduct was "unrelated to any legitimate law enforcement objective and deliberately indifferent to plaintiffs' well-being and constitutional rights" such that it "shocks the conscience" (Dkt. No. 47 ¶¶ 40–41).

The Fourteenth Amendment, however, cannot serve as a basis for plaintiffs' Section 1983 claim. Where, as here, "a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims.'" *Albright v. Oliver*, 510 U.S. 266, 273 (1994) (quoting *Graham v. Connor*, 490 U.S. 386, 394). The Fourth Amendment supplies the gravamen for plaintiffs' claims here and they cannot seek recourse for the same allegedly unconstitutional acts under the Fourteenth Amendment. Therefore, all Fourteenth Amendment claims are **DISMISSED**.

### CONCLUSION

Plaintiffs' motion to amend is **GRANTED** as to their Fourth Amendment claim against Officers Ramirez, Buckhout, and Fox to the extent set forth in this order. Specifically, the second amended complaint shall state only one Fourth Amendment claim, and shall include the allegations regarding Officer Ramirez's detention of plaintiffs, and Officers Buckhout and Fox's use of tear gas projectiles. Plaintiffs' Fourth Amendment claims are **DENIED** as to all other officers. Plaintiffs' motion to amend is **DENIED** as to their Fourteenth Amendment claim. Plaintiffs shall file a second amended complaint consistent with this order by **JULY 24, 2017**.

**IT IS SO ORDERED.**

Dated: July 17, 2017.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE